OPINION
{¶ 1} Defendant-Appellant, Terry L. Potter II, appeals a judgment of the Montgomery County Common Pleas Court finding him guilty of two counts of aggravated vehicular homicide, and sentencing him to three years in prison. Potter asserts that the trial court erred in not granting his Crim. R. 29 motion; that his conviction on each *Page 2 
charge is contrary to the manifest weight of the evidence, and that there is insufficient evidence to sustain either conviction. Finding that there was sufficient evidence to convict the appellant and that neither conviction was contrary to the manifest weight of the evidence, we affirm the judgment of the trial court.
 {¶ 2} After an evening of drinking with friends, including stops at at least six bars, Potter arrived at O'Reilly's Tavern in Brookville, Ohio. At O'Reilly's, Potter met up with an old friend, Erica Wetzel. Potter continued to drink while at O'Reilly's until approximately two a.m., when the bouncer told the bartender to cut Potter off. After the bar closed, witnesses observed Potter and Wetzel arguing about whether Potter was going to drive Wetzel's car home; however, Potter got into the driver's side, Wetzel got into the passenger side of the vehicle, and Potter drove out of the parking lot at a high rate of speed. Approximately five minutes later, friends of the couple saw an ambulance heading out of Brookville in the direction that the couple left.
 {¶ 3} At approximately 2:40 a.m., Erica Wetzel's vehicle crashed on Wolf Creek Pike, approximately one and one-half miles from O'Reilly's. The vehicle left the roadway, flipped twice, struck a tree, and ejected both Wetzel and Potter. Wetzel died at the scene of the crash, but Potter, who was life-flighted from the scene, survived.
 {¶ 4} A crash reconstructionist from the Ohio State Highway Patrol arrived at the scene of the collision after Wetzel and Potter were removed. From the physical evidence, he determined the vehicle was traveling 71 miles per hour when it left the roadway, more than thirty miles per hour over the posted speed limit of 40. The reconstructionist could not determine from the physical evidence whether Wetzel or Potter was driving Wetzel's vehicle at the time of the crash. *Page 3 
 {¶ 5} Potter was subsequently indicted for two counts of aggravated vehicular homicide. Count I charged that he recklessly caused the death of Wetzel, R.C. 2903.06(A)(2), a third degree felony. Count II charged a violation of R.C. 2903.06(A)(1), a felony of the second degree, that the death of Wetzel was due to Potter's violation of R.C. 4511.19(A). A jury found Potter guilty of both charges and the trial court sentenced him to two concurrent terms of three years incarceration.
 {¶ 6} It is from this judgment that Potter appeals, presenting two assignments of error for our review.
 First Assignment of Error {¶ 7} THE TRIAL COURT ERRED IN NOT GRANTING POTTER'S RULE 29 MOTION.
 Second Assignment of Error {¶ 8} THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT.
 {¶ 9} Potter asserts in his first assignment of error that the trial court erred in not entering a judgment of acquittal at the close of the state's evidence. The standard for reviewing a motion for acquittal pursuant to Crim. R. 29(A) was set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus: "* * * [A] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Page 4 
 {¶ 10} Potter asserts in the second assignment of error that his convictions were not supported by sufficient evidence, and because the same standard of review applies to this portion of the second assignment of error we will address the first assignment of error together with the sufficiency argument of the second assignment of error.
 {¶ 11} However, Potter also asserts, in his second assignment of error that his convictions were against the manifest weight of the evidence. Because, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different", we will address those concepts separately. State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus.
 {¶ 12} We first address Potter's claim that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} Potter was charged in the first count of the indictment with committing aggravated vehicular homicide, under R.C. 2903.06(A)(2). The essential elements of this offense, that the state had to prove, were that Potter, while operating or participating in the operation of a motor vehicle, recklessly caused the death of Erica Wetzel. Potter was also charged, in the second count of the indictment with aggravated vehicular homicide, under R.C. 2903.06(A)(1). The essential elements of this offense that the state had to prove were that Potter, while operating or participating in the operation of a motor vehicle, caused the death of Erica Wetzel as the proximate result of operating a *Page 5 
vehicle under the influence of alcohol or drugs.
 {¶ 14} Because Potter only challenges the sufficiency of the evidence to prove that he was the person who was operating the motor vehicle at the time of the crash, we will not address the sufficiency of the evidence tending to establish that he was under the influence of alcohol.
 {¶ 15} Two witnesses testified as to the events occurring in the parking lot at O'Reilly's at closing time on the evening of March 19-20, 2004. Brandon Izor was an acquaintance of both Potter and Wetzel and he had talked to them during the evening. At closing time, Izor observed both Potter and Wetzel standing outside the bar arguing. Wetzel was demanding her car keys back from Potter and she was crying. Potter refused to give them to her. Izor offered to take Wetzel home, but she did not want Potter to take her car. Izor took Wetzel back into the bar to calm her down. When they returned to the parking lot, Potter was in the driver's seat of Wetzel's car, with the engine running. Izor gave Wetzel a hug, and then she got into the passenger side of her car. Izor watched as the vehicle left the parking lot at a high rate of speed, squealing its tires, and turned onto Wolf Creek Pike. Izor next testified that between three and five minutes later, while he was still in the parking lot at O'Reilly's, he observed an ambulance pass the bar and turn onto Wolf Creek Pike in the same direction that Potter and Wetzel had gone.
 {¶ 16} Stacy Hurst, another friend of both Wetzel and Potter, testified as well. And, her testimony corroborated the events to which Izor had testified, including approximately a five minute lapse of time from when they left the parking lot until the ambulance passed by. *Page 6 
 {¶ 17} Potter's argument focuses on an eleven minute gap between the time the bar closed at 2:30 a.m. and the 9-1-1 report of the crash at 2:41 a.m., claiming that there was ample time for the vehicle to have stopped and Wetzel to have taken over the driving. However, the testimony of Izor and Hurst, if believed by the jury, would establish that a significant period of time elapsed during which Wetzel and Potter were arguing, and when Wetzel went back into the bar to calm down before getting into the vehicle to leave. Also, while numerous witnesses testified as to the difference between "bar time" and "real time," and the fact that the bar might have started closing as early as 2:00 to 2:15 am, the crucial time lapse is between the time Wetzel's vehicle left the parking lot and the crash. The only witnesses to testify to this time frame set it at less than three to five minutes.
 {¶ 18} Potter also argues that the placement of the driver's seat in Wetzel's vehicle after the crash would have made it unlikely that Potter was the driver. Trooper Charles Wright of the Ohio State Highway Patrol testified that he sat in the vehicle at the scene; that he is six feet tall, the same as Potter; and that it was a "tight fit" for him. However, this ignores his testimony and that of another officer that both the driver and front-seat passenger seats were in "the same identical positions. Seat backs were about the same angle back." Consequently, a finder of fact was not required to make an inference as to which person was driving, from the testimony of Trooper Wright that it was a "tight fit."
 {¶ 19} Potter also argues that the evidence amply established that Wetzel did not want Potter to drive her car. However, this evidence is belied by the uncontroverted fact that Wetzel finally relented and allowed Potter to drive the vehicle from the parking lot *Page 7 
with her in the passenger seat. And, Joshua Combs, another friend of both Potter and Wetzel testified that after the argument between Potter and Wetzel as to whether Potter was going to drive her vehicle, Wetzel asked him for a ride home because "she said she was too drunk to drive."
 {¶ 20} Viewing this testimony in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt that Potter was operating the motor vehicle at the time of the crash a few minutes after he was observed driving the vehicle from the bar's parking lot.
 {¶ 21} We next address Potter's claim that his conviction on both charges was contrary to the manifest weight of the evidence. When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 22} In this assignment, Potter additionally claims that the jury's finding that Potter was driving under the influence of alcohol or drugs was contrary to the manifest weight of the evidence.
 {¶ 23} Potter's companion for the evening, James Arvai testified that over the *Page 8 
course of the evening he and Potter had visited six bars, and that although he did not count Potter's drinks, he knew they each had one or two beers at each establishment, and that he believed Potter to have been intoxicated at closing time. Rachelle Johnson, who observed and knew both Potter and Wetzel testified that Potter was intoxicated; that he had a buzz, and that on a scale of one to ten, that she would put Potter at a six or seven. Daniel Risser, a bouncer testified that after Potter and Wetzel were separated during the argument about whether Potter was going to drive, that Potter told him not to worry about the argument because he was "tripping on Xanax." Michael Cobb, another bouncer at O'Reilly's testified that he observed Potter fall off a bar stool about 1:45 a.m.; that he appeared "inebriated or drunk;" and at that point he told one of the bartenders "to cut [Potter] off, in other words, not serve any more alcohol to him." Cobb also testified that after the argument, Potter "had bloodshot, glassy eyes," and that his speech was "a little slurred." Finally, Officer Douglas Jerome, of the Brookville Police Department, who was the first police officer to arrive at the scene testified that Potter had a strong odor of alcohol about him that could be smelled two to three feet away from him. And, Officer Thomas Simon, of the Perry Township Police Department testified that Potter had a strong odor of alcohol on him as well.
 {¶ 24} Based upon the foregoing, although there was no direct evidence of the alcohol content in Potter's blood, the totality of the evidence in this case clearly supports an inference that he was operating the motor vehicle while under the influence of alcohol.
 {¶ 25} After having reviewed the entire record and having considered all of the conflicting evidence, we can not say that the jury clearly lost its way in finding that Potter *Page 9 
operated the motor vehicle and that he caused the death of Erica Wetzel both recklessly and as the result of his operation of the vehicle under the influence of alcohol or drugs.
 {¶ 26} Accordingly, Potter's assignments of error are overruled.
 {¶ 27} For the foregoing reasons, the judgment of the Montgomery County Common Pleas Court is hereby affirmed.
BROGAN and GRADY, J.J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio) *Page 1